FILED & ENTERED

JUN 30 2017

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY hawkinso DEPUTY CLERK

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

RIVERSIDE DIVISION

| | |
|---|---|
| In re:<br><br>Darryl Levial Brown ,<br><br><br><br><br><br>Debtor(s). | Case No.: 6: 16-bk-18361 MJ<br><br>CHAPTER   13<br><br>MEMORADUM OF DECISION ON VALUATION MOTION FOR CHAPTER 13 LIEN AVOIDANCE<br><br><br>Dates:  March 30, 2017 and June 27, 2017<br>Time:   1:30 p.m.<br>Crtm:   301 |

   The court scheduled an evidentiary hearing on Debtor Darryl L. Brown's Motion to Avoid Junior Lien of the Moreno Valley Ranch Community Association (MVRCA) on March 30, 2017, to determine the   value of debtor's residence located at 16849 Via Lunado, Moreno Valley, California (the Property). Unfortunately, Debtor's counsel miscalendared the hearing and did not appear with his expert appraiser, instead sending appearance counsel to request a continuance. Because MVRCA's attorney and appraiser were present and ready to proceed, the court denied the continuance and held an evidentiary hearing involving only the expert testimony of appraiser Carthel E. Elliott, who was examined and cross examined by counsel.  Based upon this testimony and the court's review of his written appraisal which was received into evidence, the court found

the value of the subject property was $260,000.  Because the undisputed evidence is that $250,887 was due on the senior lien, the court denied the lien avoidance.

Debtor's counsel brought a motion for reconsideration under the provisions of Fed. R. Civ. Pro. 60 (b) (1), made applicable in the Bankruptcy Court by Fed. R. Bank. Pro. 9024, which the court granted.   The court ruled that an additional evidentiary hearing could take place at which Debtor and his expert appraiser William Schroer could be examined and cross examined.  However, the court denied a request by Debtor to present expert testimony about the costs of repairs which had been prepared only after hearing the gist of the testimony and the court's ruling on March 30.   The court further ruled that Mr. Elliott could also present additional testimony about Mr. Schroer's appraisal, testimony which had not been relevant nor allowed at the prior hearing.

The second evidentiary hearing was held on June 27, 2017, at which time Mr. Schroer, the Debtor, and Mr. Elliott testified.  The court received into evidence both written appraisals and photographs of the Property taken by Debtor.  The matter was then argued and submitted for decision.  This Memorandum of Decision shall constitute the court's findings of fact and conclusions of law as allowed under Fed. R. Bank. Pro. 7052.

The court finds the value of the Property at the relevant time[1] was $255,000.  Because the senior lien is owed an undisputed sum of $250, 887, the value of the Property exceeds that sum and the lien may not be avoided in the Chapter 13 Plan.

The Property is in the Moreno Valley Ranch area of Moreno Valley, an area of homes built between 20 and 25 years ago, largely single family tract homes with a great deal of uniformity in their original design and amenities.  Photographs of the Property and comparables in the appraisals demonstrate the uniformity of design and reinforce that these neighborhoods were all developed and sold at approximately at the same time.  In keeping with this, both appraisers picked comparable sales ("comps") which were within a mile radius of the Property, even with an overlap of one exact comp, # 3 in each appraisal.   Mr. Schroer suggested that his comps were more relevant because they were closer to the subject property.  The court rejects this contention since all were within a mile radius, a generally accepted search criteria for comps for residential appraisals.

---

[1] The appraisers used different valuations dates in their appraisals, Mr. Elliott appraising as of February 16, 2017, and Mr. Schroer using the September 16, 2016 petition date.  The case law differs on whether the appropriate date is the petition date or the confirmation date and the court did not have the parties brief that unsettled law.  The court has ruled in the past the confirmation date controls, meaning the February 16, 2017 date is closer in time.  However, other than a slight trend upward in value as recognized by both appraisers, the comps are so similar that the court finds the date variation is not a significant factor in its final valuation.

1  Moreover, Mr. Schroer did not testify why a house a few blocks away but in the same
2  neighborhood developed at the same time would not be similar to the subject, giving his contention
3  little weight.
4     All of the comps sold in a price range between $270,000 and $292,000. All of the comps
5  were either 3 or 4 bedrooms and the living space varied less than 200 square feet. Mr. Elliott's
6  opinion of value was $260,000, whereas Mr. Schroer's value was $223,000. As obvious from the
7  testimony and argument, the difference in these valuations was caused by each appraiser's
8  adjustments made due to visible disrepair of the Property. The following deficiencies in the
9  Property were noted by both appraisers: because of water damage caused by a broken sprinkler,
10 the drywall was missing from the ceiling in one bedroom; two bedrooms and the hallway were
11 without carpet; the toilet in one bathroom was broken and the flooring in that bathroom was
12 damaged; the kitchen cabinets were worn; the kitchen counters and flooring were separating from
13 the wall and baseboards; the kitchen flooring was unsatisfactory; there were holes in the drywall in
14 one bedroom; and the outdoor patio cover had dry rot and exposed nails. The Debtor testified
15 about and provided photographs of additional damaged areas (under the sink, sinking kitchen
16 counters) but the relevant damages were those noted by the appraisers and Debtor's testimony had
17 little impact on the court's valuation. The Debtor also testified that the air conditioning was not
18 working properly but had not shared that information with either appraiser. Neither appraiser
19 based his valuation on the function of the appliances, as there was no way to make a comparison of
20 such things with the comps. Therefore, the court put no weight on that testimony.
21    Since both appraisers accounted for the same damages and disrepair, their disagreement
22 came in how much each deducted from the indicated value indicated by the comps because of those
23 deficiencies. Mr. Schroer used a percentage approach and downgraded the Property on two
24 different criteria: quality of construction and condition, making between $40-45,000 total
25 adjustments from the comps. He testified that quality of construction was something different than
26 the words would reflect, not being the quality when the house was built but rather the existence of
27 upgrades from the average house. Per Mr. Schroer, condition adjustments were based on disrepair
28 but he made adjustments to "bring the house to a higher level." The court finds a substantial
   overlap between these two criteria because the "higher level" of quality is accounted for in both
   adjustments. Mr. Schroer's adjustments were done by percentage of value and were 5% for quality
   of construction (about $14,000 per house) and 10% for condition (about $28,000 per house). The
   percentages were arbitrary, not tied to actual repairs or upgrades the Property would need. Mr.

Schroer did not think the rotted patio cover had much impact on value, as he made no adjustments for outside cosmetics.

Mr. Elliott made adjustments for the disrepair and damage based on his estimate of what it would cost to bring the house up to standard. He estimated replacing the carpeting and flooring in most of the house, repairing the drywall[2], fixing up the kitchen, fixing the drywall holes[3], and replacing the toilet could all be done for less than $10,000 using medium quality materials. Based on this analysis, he made total adjustments to the comps for the property condition of $10-15,000. He made no adjustments for quality of construction, defining that term to be the quality at the time the house was built. Since the houses were all built in the same phase of development, he saw no variation. Mr. Elliott made no adjustments for the rotting patio cover, as such outside amenities are within the taste of the property owner and do not add to nor subtract from the appraised valuation.

The court finds the opinion of Mr. Elliott more believable and compelling. The testimony and photographs all demonstrate that this house's shortcomings are all cosmetic. Other than replacing the drywall in one bedroom's ceiling, none of the deficiencies are structural. A thorough deep cleaning of the house, replacing the flooring with tile and carpet, replacing the broken toilet and doing repairs to the kitchen counters and floors would make this house look very similar to the pictures and descriptions of the comps. None of these repairs justify the $40-45,000 adjustments made to value by Debtor's appraiser, adjustments calculated using arbitrary percentages. The court accepts Mr. Elliott's more precise method for estimating what it would cost to bring this house up to standard.

The court rejects Debtor's argument based on the square footage value of the houses. Although the price per square foot is a line item on the appraisal form, neither appraiser gave that line any weight. Mr. Elliott testified that square footage value is only used in the cost approach and it has no impact on comparable sale valuations. The court accepts this expert testimony, particularly when it is consistent with neither appraiser giving that factor any weight.

---

[2] Mr. Elliott testified that debtor told him he had an estimate to repair the drywall of $600. Debtor recalled telling Mr. Elliott an amount but could not remember how much.

[3] The Debtor stated that he had made the holes in the drywall to pull through electrical lines when he was renovating one of the bedrooms. Since Debtor purposely made those holes, the court makes no valuation deductions since he obviously intended to repair them at little or no cost.

- 4 -

The court's valuation after the hearing with only Mr. Elliott's testimony and his appraisal was $260,000. This testimony did not directly address the kitchen counter issue which was highlighted by Debtor's testimony and photographs. The court has made a further adjustment in value of $5000, a liberal allowance for repairing or replacing those countertops. Based on that further adjustment, the court finds the value to be $255,000.

Based on a value of $255,000 and a senior lien of $250,887, the lien of MVRCA cannot be avoided in the Chapter 13 plan. Counsel for MVRCA shall submit an order consistent with this decision.

###

Date: June 30, 2017

Meredith A. Jury
United States Bankruptcy Judge